## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHELLE DOTY,

      Plaintiff,

      v.

PIKE COUNTY CORRECTIONAL
FACILITY, et al.,

      Defendants.

CIVIL ACTION NO. 3:04-CV-1742

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants Pike County Correctional Facility ("PCCF"), John Frawley, Sergeant James Monaghan, Officer Daniel Gilligan, Lieutenant Robert McLaughlin, Lieutenant Eric Stewart, and Richard Caridi's ("Individual Defendants") Motion for Summary Judgment as to Plaintiff Michelle Doty's Amended Complaint, in which she claims that she has been impermissibly discriminated against based on her race and sex.  For the reasons set forth below, Defendants' motion will be granted as to Counts I, II, III, IV and V.  The Court has jurisdiction over these counts pursuant to 28 U.S.C. § 1331.  The Court will decline to exercise its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Count VI of Plaintiff's Amended Complaint, and will dismiss this claim without prejudice.

## BACKGROUND

The facts presented in the summary judgment record, viewed in the light most favorable to Plaintiff, are as follows.  Plaintiff was employed by PCCF as a correctional officer from September 14, 1998 until September 19, 2002. (Doc. 39-1 ¶1; Doc. 25-1 ¶ 2.)  During this time, Plaintiff alleges that she was the victim of several acts of

discrimination perpetrated by the Individual Defendants, her co-workers and supervisors.

**June 5, 2002**

Plaintiff was assigned to work as a Central Control Operator, a position which carries the responsibility of electronically opening doors between jail units and between the outside and inside of the jail. (Doc. 25-1 ¶¶ 24-25.)  During Plaintiff's shift, Defendant Stewart came in from the firing range carrying weapons and ammunition. (Pl.'s Dep. 55:17-56:4, Sept. 20, 2005.)  Stewart failed to inform Plaintiff that he was carrying the weapons and ammunition. *Id.*  At the time, Plaintiff believed that Defendant McLaughlin, not Stewart, was in charge of the weapons and ammunition. *Id.*  However, Plaintiff admits that she saw on the security camera that Stewart was carrying "a box." (Pl.'s Dep. 56:10.)  As she let Stewart in, Plaintiff allowed an interior door of the jail to remain open, leaving no barrier between the weapons and the inmates. (Pl.'s Dep. 55:23-25.)  This was a serious violation of security protocol. (Pl.'s Dep. 56:20-22.)  As a result of the security breach, McLaughlin immediately disciplined Plaintiff by reassigning her from Central Control to work as an E-Unit Housing Officer. (Doc. 25-1 ¶ 31.)  Stewart and McLaughlin were not disciplined for their failure to inform Plaintiff or Central Control that Stewart was the one in charge of the weapons and ammunition at the time. (Doc. 39-1 ¶ 34.)  This, Plaintiff alleges, is evidence of Defendants' discrimination. *Id.*  Later on that same day, Defendant Frawley informed Plaintiff that she was reassigned from Central Control to E-Unit because of the security breach. (Pl.'s Dep. 56:23-57:3.)  Plaintiff has alleged that E-Unit was an undesirable assignment and that male correctional officers were not given such undesirable assignments. (Doc. 3 ¶ 24.)  However, it is undisputed that male

2

officers were given such undesirable assignments (Pl.'s Dep. 59:21-60:17), and that Plaintiff was later reassigned to Central Control (Doc. 25-1 ¶ 33; Doc. 39-1 ¶ 33).

**July 20, 2002**

Plaintiff was accused by Defendant Frawley, a Sergeant at PCCF at the time, of bringing contraband, in the form of magazines, into the C-Unit of PCCF and providing them to the inmates. (Doc. 25-1 ¶ 35; Pl.'s Aff. ¶ 35.)  Plaintiff avers that she was given permission by PCCF counselors to bring magazines to the inmates for their recreation. (Pl.'s Aff. ¶¶ 36-39.)  Defendants contend that the provision of magazines to inmates is a violation of PCCF policy. (Doc. 25-1 ¶ 36.)  Regardless, Frawley called Plaintiff to his office to speak with her about the magazines. (Doc. 25-1 ¶ 37; Pl.'s Aff. ¶ 45.)  Defendant Monaghan was present in Frawley's office. (Pl.'s Aff. ¶ 46.)  During the course of the meeting, Frawley kept "badgering" and "harassing" Plaintiff. (Pl.'s Dep. 48:6.)  Plaintiff then told Frawley to "grow a set of balls." (Pl.'s Aff. ¶ 50.)  Reports of the meeting and Plaintiff's insubordination were submitted to Assistant Warden Craig Lowe, not a defendant, who recommended to Defendant Caridi, Warden of PCCF at the time, that Plaintiff be given a suspension of one day without pay. (Pl.'s Aff. ¶¶ 55-56.)  Caridi suspended Plaintiff for one day without pay for insulting Frawley. (Doc. 25-1 ¶ 47.)  Plaintiff avers that Caridi discriminated against her by disciplining her more severely than he disciplined male correctional officers when they committed insubordination. (Doc. 39-1 ¶ 42.)  In fact, Plaintiff alleges that she was given a suspension rather than merely a reprimand in order to interfere with her being hired for a position with the federal prison system. (Pl.'s Aff. ¶ 70.)

**September 19, 2002**

Plaintiff was assigned to work in the A-Unit. (Pl.'s Aff. ¶ 80.)  While conducting morning meal procedures, Plaintiff was informed that she was to go to the Shift Commander's Office. *Id.*  When Plaintiff entered the Shift Commander's Office, she saw that Defendants Frawley and Stewart where there. (Pl.'s Dep. 121:3-5.)  Frawley directed Plaintiff to close the door behind her. (Pl.'s Aff. ¶ 81.)  At that point, Plaintiff requested and was denied union representation. (Pl.'s Aff. ¶¶ 82-83.)  Frawley and Stewart wanted to discuss something that happened the previous day concerning the start of recreation in C-Unit. (Pl.'s Aff. ¶ 89.)  During the course of the meeting, Plaintiff tried to explain her side, but voices were raised and she became emotional due to Frawley's and Stewart's alleged harassment. (Pl.'s Aff. ¶¶ 91-103.)  Plaintiff then began to experience a panic attack. (Pl.'s Aff. ¶¶ 102-104.)  Plaintiff then left the office and went to the women's locker room to compose herself. (Pl.'s Aff. ¶ 103.)  A female correctional officer, Sergeant Bedson, was then sent to try to calm Plaintiff down. (Pl.'s Aff. ¶¶ 105-106.)  Defendant McLaughlin then came out of the main office and told Plaintiff that she had two choices – either go back to work or leave the facility. (Pl.'s Aff. ¶ 108.)  Plaintiff responded that she could not stay and turned in her equipment and facility identification (Pl.'s Aff. ¶¶ 112-116.)  Plaintiff then left PCCF. (Pl.'s Aff. ¶ 120.)  She did not return to work. (Pl.'s Aff. ¶ 131.)  Afterwards, Plaintiff sent letters to Defendant Caridi stating that she did not quit her job. (Pl.'s Aff. ¶¶ 133,136.)  Plaintiff then requested six (6) weeks leave pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. (Pl.'s Aff. ¶¶ 136, 139.)  Plaintiff alleges that Frawley and Stewart's actions, as well as McLaughlin's ultimatum, discriminated against her based on her race and sex.

**Other Incidents**

Plaintiff also gave testimony in her deposition as to other incidents of alleged racial and gender discrimination, such as Defendant Gilligan making racial jokes and comments while at lunch with other correctional officers (Pl.'s Dep. 13:16-14:14; Doc. 3 ¶¶ 44-45), Defendant Frawley ripping up one of Plaintiff's reports (Pl.'s Dep. 37:5-9) and removing disciplinary violations and reprimands Plaintiff had given inmates (Pl.'s Aff. ¶ 169(c)), and Defendant Monaghan laughing at Plaintiff and sending her home when she had laryngitis (Pl.'s Dep. 48:12-24).[1]  In addition, Plaintiff stated that she was retaliated against for complaining to Charles Connelly, a sergeant at PCCF until 2001, about the alleged discrimination. (Pl.'s Dep. 32:11-20.)

**Unemployment Compensation Claim**

On September 22, 2002, Plaintiff filed for unemployment compensation benefits with the Commonwealth of Pennsylvania, Department of Labor and Industry ("Department"). (Doc. 25-11 at 1.)  After the Department initially approved the grant of benefits, a hearing was held before the Unemployment Compensation Referee ("Referee"), at which Plaintiff, represented by counsel, and PCCF employees appeared

---

[1]Plaintiff has also presented affidavits from two former correctional officers at PCCF, former Sergeant Charles Connelly and former Officer Laurel Larson. (Docs. 40-4, 40-5.) Both affidavits are replete with inadmissible hearsay, speculation and irrelevancies.  Those paragraphs containing such inadmissible evidence will not be considered.  In addition, there is no evidence that Plaintiff was privy to some of the incidents, conversations and statements described by Connelly and Larson in their affidavits.  As such, Plaintiff could not subjectively perceive these incidents as creating a hostile work environment.  Consequently, those incidents Plaintiff did not herself attest to witnessing will not be considered. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)

and testified. (Doc. 25-11 at 3.)  The Referee reversed the decision of the Department

and denied benefits. (Doc. 25-11 at 1.)  The Unemployment Compensation Board of

Review ("Board") affirmed the Referee's decision.  *Id.*  The Board made the following

relevant findings of fact:

> 3. On September 19, 2002, a supervisor was attempting to gather statements from correctional officers in reference to a scheduling problem within the prison.
> 4. The supervisor told [Plaintiff] that he wanted to speak with her.
> 5. Upon hearing the supervisor's request, [Plaintiff] questioned as to whether she would need representation from her union. . . .
> 7. [Plaintiff] was advised by the supervisor that the conversation did not involve discipline and union representation was not necessary.
> 8. [Plaintiff] felt that the inquiry was harassment directed at her by her supervisor and that it was the intention of the supervisor to blame [Plaintiff] for something that she did not do.
> 9. [Plaintiff] was not being harassed or in any manner abused by her supervisor who was performing his duties in an appropriate manner.
> 10. [Plaintiff] became emotionally upset and said that she was quitting her job.
> 11. At that time, another correctional officer spoke with [Plaintiff] and advised [her] that she was "overreacting."
> 12. The co-worker attempted to persuade [Plaintiff] not to quit her job, but to calm down and reconsider her decision.
> 13. The claimant refused and handed in her badge and identification for access to the prison.
> 14. At this time, the co-worker stated to [Plaintiff] that if she was quitting, she should hand in all equipment presently in her possession.
> 15. [Plaintiff] did not protest and complied with this request.
> 16. [Plaintiff] left [PCCF] and then called her psychologist to complain that she was being "harassed" and that she was now suffering from severe distress due to anxiety and panic attacks.
> 17. [Plaintiff] was scheduled to work Friday, September 20, and Saturday, September 21, 2002. [Plaintiff] did not report to work those days and did not contact [PCCF] to explain her absence.
> 18. [Plaintiff] was also scheduled to work on September 24 and September 25, 2002, but failed to report those days and did not contact [PCCF] to explain her absence. . . .
> 21. [Plaintiff] voluntarily quit her employment . . . .

(Doc. 25-11 at 1-3.)  Additionally, the Board observed that "[i]t is evident that [Plaintiff], for whatever reason, became emotionally upset due to the fact that a supervisor made a simple request of her." (Doc. 25-11 at 3.)  Consequently, on January 13, 2003, the Board denied Plaintiff's claim for unemployment compensation benefits.  Plaintiff did not appeal this administrative decision to the Commonwealth Court of Pennsylvania.[2]

**Administrative Complaints of Discrimination**

One month later, on February 18, 2003, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"). (Doc. 25-1 ¶ 3.)  This complaint was simultaneously filed with the Equal Employment Opportunity Commission. (Doc. 25-1 ¶ 5.)  Plaintiff received a right-to-sue letter from the EEOC on May 11, 2004. (Doc. 3 ¶ 4.)

**Proceedings Before the Court**

On August 6, 2004, Plaintiff filed a Complaint in this Court. (Doc. 1-1.)  Plaintiff filed an Amended Complaint on August 17, 2004. (Doc. 3.)  In her Amended Complaint, Plaintiff alleged that she has been deprived her First, Fourth, Sixth and Fourteenth Amendment rights under color of state law, in violation of 42 U.S.C. §§ 1983, 1985, 1986, 1988. (Doc. 3 ¶ 1.)  Plaintiff also raised an employment discrimination claim pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and state law actions for conspiracy, intentional infliction of emotional distress, and wrongful

---

[2]State administrative fact-finding is entitled to preclusive effect in the federal courts, even when the state agency's findings are not reviewed by state courts. *See* 28 U.S.C. § 1738; *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986); *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) (state administrative fact-finding has preclusive effect in section 1983 actions); *Roth v. Koppers Indus., Inc.*, 993 F.2d 1058, 1062 (3d Cir. 1993) (state administrative fact-finding has no preclusive effect in Title VII actions).  As such, the Court will assume the truth of the facts found by the Board as to Plaintiff's section 1983 claims.  These findings include that Plaintiff was not harassed on September 19, 2002, that she said she was quitting her job, that she refused to retract her resignation and turned in her equipment and badge. Based on these facts, the Court concludes that a reasonable jury could not find that Plaintiff was discharged from her job.

discharge. *Id.*  Plaintiff sought compensatory and punitive damages. (Doc. 3 p.16.)

PCCF and the Individual Defendants filed a Motion to Dismiss Plaintiff's Amended

Complaint on October 25, 2004. (Doc. 12.)  On February 24, 2005, the Court partially

granted this motion, dismissing: (1) Plaintiff's punitive damage claims against both PCCF

and the Individual Defendants in their official capacities; (2) Plaintiff's section 1983 claims

against Officer Daniel Gilligan; (3) Plaintiff's section 1983 retaliation claim as to all

defendants; and (4) Plaintiff's intentional infliction of emotional distress claim as to all

defendants. (Doc. 17.)  Plaintiff's remaining claims include the following counts: (I)

section 1983 claim for deprivation of a federal right under color of law; (II) section 1985

and 1986 claims for conspiracy and wrongful neglect; (III) section 1983 claim for wrongful

discharge; (IV) Title VII Hostile Work Environment claim; (V) Title VII Retaliation claim;

and (VI) state law civil conspiracy claim.  On October 31, 2005, PCCF and the remaining

Individual Defendants filed a Motion for Summary Judgment (Doc. 24) as to Plaintiff's

remaining claims, as well as a Supporting Brief (Doc. 26).  On December 28, 2005,

Plaintiff filed a Brief in Opposition. (Doc. 37-1.)  Consequently, the remaining defendants'

Motion for Summary Judgment is fully briefed and now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is material if proof of its

existence or nonexistence might affect the outcome of the suit under the applicable

substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish

that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

### DISCUSSION

**I. Section 1983 claim**

Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of any federal right shall be liable to the party injured.  In Count I of her Amended Complaint, Plaintiff alleges that she has been deprived her First, Fourth, Sixth and Fourteenth Amendment rights under the color of state law.

**A. Deprivation of Plaintiff's First / Fourteenth Amendment Rights**

By accepting public employment, one does not give up her First Amendment right to freedom of speech. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).  Indeed, the First Amendment protects public employees from retaliation because of their speech when that speech involves a matter of public concern. *Id.*  For a plaintiff to establish a prima facie case for a First Amendment retaliation claim, she must show that her particular speech involves a matter of public concern and that it was a substantial or motivating factor in the defendant's alleged retaliatory action. *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274 (1977).  In addition, the plaintiff must show that the value of the speech outweighs the governmental interest "in the effective and efficient fulfillment of its responsibilities to the public." *Connick v. Myers*, 461 U.S. 138, 150 (1983).

Whether a public employee's speech involves a matter of public concern depends upon the content, form and context of the speech. *Id.* at 147-48.  Speech which "can be fairly considered as relating to a matter of political, social, or other concern to the community may be characterized as speech involving a matter of public concern." *Id.* at

10

146.  Speech which aims to identify or eradicate discrimination in a public institution generally involves a matter of public concern and enjoys the protection of the First Amendment. *See, e.g., Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994) ("Disclosing corruption, fraud, and illegality in a government agency is a matter of significant public concern"); *see also Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001); *Davis v. Ector County*, 40 F.3d 777, 783 (5th Cir. 1994); *Wilson v. U.T. Health Ctr.*, 973 F.2d 1263, 1269 (5th Cir. 1992).

In the present case, the only speech for which Plaintiff could have been retaliated against are the oral complaints she made to former Sergeant Connelly concerning the discrimination she felt she was experiencing from the other correctional officers.[3]  These internal employee complaints do not appear to involve a matter of public concern. *Azarro v. County of Allegheny*, 110 F.3d 968, 981 (3d Cir. 1997) (Becker, J., concurring) (stating that speech does not involve a matter of public concern, and summary judgment for the defendant will be appropriate, in "cases where the offender is a non-supervisory co-worker and the incident is more than 'isolated,' though neither egregious nor repeated with great frequency; where the incident is not known to the 'powers that be'; where, even if a supervisor is involved, the incident is minor or questionable; where the motive or credibility of the complainant is significantly in doubt; or where a combination of these

---

[3]Plaintiff admits that, other than these oral complaints to Connelly, she did not complain of discrimination until after she left the employ of PCCF. (Pl.'s Dep. 26:21.)  Additionally, the Court notes that Plaintiff's complaints to Connelly could not have been related to the three main incidents of alleged discrimination she puts forth, as these incidents occurred in 2002, the year after Connelly retired. (Pl.'s Dep. 32:20.)

factors is at work").[4]

However, even assuming that Plaintiff's complaints to Connelly did touch a matter of public concern, there is no evidence in the summary judgment record suggesting that her complaints were a substantial or motivating factor in the discrimination she allegedly experienced thereafter.  Indeed, there is no evidence to suggest that any of the instances of alleged discrimination Plaintiff points to – her reassignment to E-Unit, her reprimand for providing magazines to the inmates and her subsequent suspension for telling Defendant Frawley to "grow a set of balls," Frawley's ripping up her report and removing disciplinary write-ups, Defendant Gilligan's racial comments – were causally connected to the complaints Plaintiff made to Connelly prior to his retirement in 2001.  Thus, the Court will grant summary judgment against Plaintiff as to this part of her section 1983 claim.

## B. Deprivation of Plaintiff's Fourth / Fourteenth Amendment Rights

The Fourth Amendment to the United States Constitution secures the right of the people to be free from unreasonable searches and seizures. U.S. CONST. amend. IV. Plaintiff has failed to present any evidence that she was subject to a search or seizure. Accordingly, the Court will grant summary judgment in favor of PCCF and the Individual Defendants as to this part of Plaintiff's section 1983 claim.

---

[4]The Court notes, but finds distinguishable, the Third Circuit Court of Appeals en banc decision in *Azarro.*  In *Azarro*, the alleged harasser was an assistant to a public official, and, so, the court held that the internal allegation made by the plaintiff was a matter of public concern because it was relevant to the process of self-government – that is, the electorate's evaluation of the official. 110 F.3d at 978-80. *See McDaniel v. Am. Red Cross*, 58 F. Supp. 2d 628, 631 n.5 (W.D. Pa. 1999).

## C. Deprivation of Plaintiff's Sixth / Fourteenth Amendment Rights

The Sixth Amendment to the United States Constitution secures an accused the rights "to a speedy and public trial, by an impartial jury . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI.  Plaintiff has failed to allege or offer any evidence that she is subject to a criminal prosecution.  As such, the Court will grant summary judgment against Plaintiff as to this part of her section 1983 claim.

## D. Deprivation of Plaintiff's Fourteenth Amendment Rights

Intentional race and gender discrimination by persons acting under the color of state law violates the Fourteenth Amendment and gives rise to a section 1983 claim. *See e.g., Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 455 (8th Cir. 2001); *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994); *Pontarelli v. Stone*, 930 F.2d 104, 113-14 (1st Cir. 1991); *Bohen v. City of E. Chic.*, 799 F.2d 1180, 1185 (7th Cir. 1986).  Here, Plaintiff appears to argue that she has been denied her Fourteenth Amendment rights because she has been treated differently than similarly situated male correctional officers.[5]  To prove that such disparate treatment is in fact intentional discrimination, Plaintiff must show that the disparate treatment was based upon her gender. *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990).  Such discriminatory intent may be shown through direct or circumstantial evidence. *Glanzman v. Metro. Mgmt. Corp.*, 290 F. Supp. 2d 571,

---

[5]Plaintiff does not allege and has presented no evidence to suggest that she was treated differently because of her race.  As such, the Court will address only her claim of gender discrimination.

578 (E.D. Pa. 2003).

Direct evidence is evidence, such as discriminatory remarks, which itself proves discriminatory animus and requires no inference or interpretation. *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002).  Here, Plaintiff has offered no admissible direct evidence, such as remarks directed at or made to her showing an animus towards women, to show a discriminatory motive for the actions taken by her superiors.  As such, the Court must now examine whether Plaintiff can establish that PCCF and the Individual Defendants acted with discriminatory intent through circumstantial evidence using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a prima facie case of employment discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  A plaintiff must show: (1) that she is within the protected class; (2) was qualified for the position; (3) that she suffered an adverse employment action; and (4) the position remained open and was ultimately filled by someone outside the protected class, or a similarly situated individual outside the plaintiff's protected class was treated more favorably. *See id.; Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 440 (E.D. Pa. 2001).  Establishment of a prima facie case creates a presumption that the defendant acted with discriminatory intent. *McDonnell Douglas*, 411 U.S. at 802. The defendant can rebut this presumption by producing a legitimate, nondiscriminatory reason for its actions. *Id.*  Once a defendant has put forth such a reason, the plaintiff must then show that defendant's stated reason is pretextual. *Id.* at 804.

14

Defendants argue that Plaintiff lacks factual support to establish her prima facie case.  The Court agrees.  First, Plaintiff has failed to allege or present evidence that someone outside her protected class filled her position when she was reassigned from Central Control to E-Unit, or when she was suspended for insubordination.  Indeed, Plaintiff concedes that she returned to Central Control after the security breach that caused her reassignment.

Plaintiff has also failed to show that similarly situated male correctional officers were treated more favorably than she was in regard to discipline.  Specifically, Plaintiff has failed to present evidence that male correctional officers were not suspended for insubordination similar in nature to that which Plaintiff admits she committed.  While Plaintiff describes in her affidavit several situations she alleges show that male officers were disciplined less severely than she was (Pl.'s Aff. ¶ 62), the comparators and situations involving them are not similar enough to Plaintiff's telling Defendant Frawley, a sergeant, to "grow a set of balls," to support a finding of disparate treatment.  Indeed, the only similar incident Plaintiff relates involves Defendant Gilligan, an officer, cursing out Defendant Frawley, a sergeant. (Pl.'s Aff. ¶ 62.)  However, Plaintiff explains in her affidavit that Gilligan was not suspended because of his political allegiance to Defendant McLaughlin, also a sergeant. *Id.*  This dispels any inference of gender animus on the part of Defendants.  Additionally, even if the other instances of insubordination and the ranks of correctional officers were similar, there is no evidence that the alleged differential treatment was due to Plaintiff's gender.[6]  Lastly, the Court notes that Plaintiff alleged in

---

[6]Plaintiff even relates an incident in which Officer Mary Host threw her equipment at Defendant Frawley and was not disciplined. (Pl.'s Aff. ¶ 62.)  This implies that there was

her union grievance form that she was suspended not because of her gender but rather

for her union position as a shop steward. (Doc. 40-18 p.3.)

Thus, there is insufficient evidence in the summary judgment record for Plaintiff to

establish her prima facie case of gender discrimination under the *McDonnell Douglas*

framework.  Accordingly, the Court will grant PCCF's and the Individual Defendants'

motion for summary judgment as to Count I of Plaintiff's Amended Complaint.

## II. Section 1985 and 1986 claims

Section 1985 provides a plaintiff with a cause of action where two or more persons

conspire to deprive the plaintiff of her civil rights. 42 U.S.C. § 1985(3).  For a plaintiff to

establish a claim under the civil rights conspiracy statute, she must show: "(1) a

conspiracy; (2) motivated by a racial or class based discriminatory animus designed to

deprive, directly or indirectly, any person or class of persons to the equal protection of the

laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or

the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*,

112 F.3d 682, 685 (3d Cir. 1997) (citing *Griffen v. Breckenridge*, 403 U.S. 88, 102

(1971)).  A plaintiff alleging gender-based discrimination may pursue relief pursuant to

section 1985(3). *Palace v. Deaver*, 838 F. Supp. 1016, 1020 (E.D. Pa. 1993).

Here, Plaintiff has failed to present evidence to create a genuine issue of material

fact as to the existence of a conspiracy.  Specifically, there is no evidence in the

summary judgment record tending to show an agreement and concerted action among

the Individual Defendants, who were employed by PCCF, to discriminate against Plaintiff

---

no gender animus.

16

personally, or as a member of a protected class.  Plaintiff's conclusory allegations of conspiracy without any factual support are not sufficient to survive summary judgment.

Section 1986 is a companion statute to section 1985(3) and provides a plaintiff with a cause of action against any person who, knowing that a violation of section 1985 is to be committed, and possessing the power to prevent the violation from occurring, fails to take action. 42 U.S.C. § 1986.  Violations of section 1986, by definition, only occur if section 1985 has been violated.  Thus, as Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to a violation of section 1985, Plaintiff's section 1986 claim must fail. *Perez v. Cucci*, 725 F. Supp. 209, 254 (D.N.J. 1989), *aff'd*, 898 F.2d 142 (3d Cir. 1990) (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)).  Accordingly, the Court will grant summary judgment in favor of PCCF and the Individual Defendants as to Count II of Plaintiff's Amended Complaint.

### III. Section 1983 Wrongful Discharge claim

The Unemployment Compensation Board of Review found that Plaintiff stated that she was quitting her job, that she refused to retract her statement, that she was not being harassed at the time, and that she returned her equipment, badge and identification. Under *Edmundson*, the Court must give preclusive effect to these factual findings of the Board in regard to Plaintiff's section 1983 claims. 4 F.3d at 189.  With these facts having been established, the Court is of the opinion that no reasonable jury could find that Plaintiff was discharged.  Therefore, the Court will grant summary judgment in favor of PCCF and the Individual Defendants on Count III of Plaintiff's Amended Complaint.

17

**IV. Title VII claims against the Individual Defendants**

The Individual Defendants have moved for summary judgment as to Plaintiff's Title VII claims (Counts IV and V), arguing that, because they were not named as respondents in Plaintiff's PHRC/EEOC complaint, Plaintiff failed to exhaust her administrative remedies against them.  Consequently, the Individual Defendants assert, the Court lacks subject matter jurisdiction under 42 U.S.C. § 2000e to consider Plaintiff's Title VII claims against them.

Under Title VII, a complainant must file charges with the EEOC against a party prior to commencing a civil action against that party in district court. 42 U.S.C. § 2000e-5(f)(1) (providing that the person aggrieved may, within ninety (90) days of receiving a right-to-sue letter from the Commission, bring a civil action "against the respondent *named in the charge*") (emphasis added).  "The provision requiring the naming of the respondent in the EEOC charge is a jurisdictional prerequisite to the institution of suit against that party." *Dreisbach v. Cummins Diesel Engines, Inc.*, 848 F. Supp. 593, 595 (E.D. Pa. 1994).  The policy behind this requirement is "to give notice to the charged party and to provide an avenue for voluntary compliance without resort to litigation." *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir. 1977).

In *Glus*, the Court of Appeals for the Third Circuit set forth a four-factor test to determine whether an EEOC charge against one party would allow a district court to exercise jurisdiction over Title VII claims against another, unnamed, party.  The four factors are as follows:

> 1) whether the role of the unnamed party could through
> reasonable effort by the complainant be ascertained at the

time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 888.

Here, Plaintiff does not dispute that she did not name the Individual Defendants as respondents in her PHRC/EEOC complaint.[7]  Applying the *Glus* test, Plaintiff was well aware of each of the Individual Defendants' roles at the time she filed her complaint. Indeed, Plaintiff knew each Individual Defendant personally and the factual allegations set forth in her PHRC/EEOC complaint describe in detail how each of them allegedly acted in a discriminatory manner towards her. (Doc. 25-2.)

As for the second and third factors, even assuming arguendo that the Individual Defendants' interests were substantially similar to those of PCCF, they would suffer actual prejudice if the Court were to allow Plaintiff to proceed on her Title VII claims against them, as her failure to name them in the administrative complaint eliminated their opportunity to attempt conciliation. *See Duva v. Bridgeport Textron*, 632 F. Supp. 880, 883 (E.D. Pa. 1985); *Martin v. Easton Publ'g Co.*, 478 F. Supp. 796, 798 (E.D. Pa. 1979).

Fourth, there is no evidence in the summary judgment record to suggest that the

---

[7]The Court rejects PCCF's argument that Plaintiff failed to name it as a respondent in her PHRC/EEOC complaint when she named "Pike County Jail" as the respondent. (Doc. 25-2 p. 2.)  PCCF ignores the fact that PCCF is correctly named later in the complaint. (Doc. 25-2 p. 3.)

Individual Defendants represented to Plaintiff that their legal relationship would be through PCCF.

The Court, therefore, concludes that it lacks subject matter jurisdiction over Plaintiff's Title VII claims against the Individual Defendants. Accordingly, the Court will grant the Individual Defendants' motion to dismiss Plaintiff's Title VII claims (Counts IV and V) against them.[8]

## V. Title VII claims against PCCF

Under Title VII, "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

### A. Hostile Work Environment

#### 1. Legal Standard

To establish a prima facie case of "hostile work environment," a plaintiff must show that "(1) [s]he suffered intentional discrimination because of [her] [race or sex]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected [her]; (4) it would have detrimentally affected a reasonable person of the same protected class in [her] position; and (5) there is a basis for vicarious liability." *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001) (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081

---

[8] The Court notes that Plaintiff lacks a Title VII claim against Defendant Gilligan, her co-worker of the same rank (Pl.'s Dep. 14:21-15:21, Sept. 20, 2005) because he did not supervise the Plaintiff during the course of her employment. *Duva*, 632 F. Supp. at 882.

(3d Cir. 1996)).  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotes omitted). Both an objective and subjective test must be met; that is, the conduct complained of must be severe and pervasive as to constitute a hostile work environment both as to the reasonable person and as to the actual victim. *Id.* at 21-22.

In determining whether a work environment is objectively hostile, a court should "not examine the scenario on an incident-by-incident basis, but instead must consider the totality of the circumstances." *Roberts v. Univ. of Pa.*, No. Civ. A. 00-3377, 2001 WL 1580304, *5 (E.D. Pa. Dec. 11, 2001) (citing *Andrews*, 895 F.2d at 1485).  Circumstances to consider "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Isolated or sporadic comments, or comments that are part of casual conversation, do not violate Title VII. *See Andrews*, 895 F.2d at 1482; *Harris*, 510 U.S. at 20.  Rather, "there must be a steady barrage of opprobrious racial comments." *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).  Title VII is not "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998).

### 2. Analysis

Viewing all the facts and reasonable inferences in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to present sufficient evidence to

survive Defendants' motion for summary judgment.

### a. Race

Plaintiff testified in her deposition that only a single individual, Defendant Gilligan, ever made any racial comments to her. (Pl.'s Dep. 14:6.)  Plaintiff stated that Gilligan, while at lunch with other correctional officers, "would talk about Black people . . . call them the N word or apes." (Pl.'s Dep. 16:12-24.)   Gilligan also said that eventually he was going to get Plaintiff to call Black people the "N" word. *Id.*  However, Plaintiff failed to give exact dates as to when Gilligan made these racially insensitive comments, or even an estimate as to how many comments in total were made or how often they were made. Instead, Plaintiff vaguely and conclusorily stated that Gilligan made such comments "numerous times." (Pl.'s Dep. 16:4-9, 17:5-8.)  Moreover, Plaintiff does not allege, nor does she present any evidence, that Gilligan ever specifically called Plaintiff a racially derogatory name or directed any racial slurs at her.  There is also no evidence to suggest that Gilligan's comments unreasonably interfered with Plaintiff's work performance. Thus, Gilligan's comments, while lamentable, were not particularly severe or pervasive as to constitute a hostile work environment.  Rather, Gilligan's comments appear to merely be unactionable "offensive utterances" which did not alter the terms or conditions of Plaintiff's employment.

### b. Gender

Plaintiff has alleged several instances in which she claims she was discriminated against based on her gender, including her reassignment from Central Control to E-Unit, her reprimand for providing the inmates magazines and her subsequent suspension for

22

insubordination, Defendant Frawley's ripping up her report and removing disciplinary write-ups of inmates.  However, there is no evidence in the record that these incidents were motivated by Plaintiff's gender, as opposed to personal animosity between the Individual Defendants and Plaintiff, or the Individual Defendants' mere dislike of Plaintiff. In addition, when viewed over a four year period, there are too few specific instances of conduct of which Plaintiff complains to satisfy the requirement that the gender hostility rise to the level of an objectively severe or pervasive nature. *See Mitchell v. Pope*, No. 05-14927, 2006 WL 1976011 (11th Cir. July 14, 2006) (sixteen instances of offensive conduct over four year employment period did not constitute actionable hostile work environment).  Accordingly, the Court will grant PCCF's motion for summary judgment as to Count IV (hostile work environment) of Plaintiff's Amended Complaint.

### B. Retaliation

In Count V of Plaintiff's Amended Complaint, Plaintiff alleges that PCCF retaliated against her in violation of Title VII.  In order to establish a claim for unlawful retaliation, a plaintiff must produce evidence that "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001).

Assuming arguendo that the verbal complaints Plaintiff made to former Sergeant Connelly are sufficient to constitute protected activity, Plaintiff has failed to present evidence to create a genuine issue of material fact as to whether these complaints

caused her to suffer an adverse employment action.  The Court notes that there is no evidence in the summary judgment record that Connelly discriminated or retaliated against Plaintiff in any way because of her complaints, or that anyone to whom Connelly communicated these complaints discriminated against Plaintiff specifically because of her complaints.  Indeed, all of the instances of alleged discrimination Plaintiff puts forward – her reassignment to E-Unit, her reprimand for providing magazines to the inmates and her subsequent suspension for insubordination, Defendant Frawley's ripping up her report and removing disciplinary write-ups of inmates, Defendant Gilligan's racial jokes -- appear to be wholly unrelated to Plaintiff's verbally complaining to Connelly.  Consequently, PCCF's motion for summary judgment as to Count V (retaliation) of Plaintiff's Amended Complaint will be granted.

## VI. State Law Civil Conspiracy

Whereas Plaintiff's now dismissed federal law claims were the bases for subject matter jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law civil conspiracy claim. 28 U.S.C. § 1367(c) (a federal district court may decline to exercise supplemental jurisdiction over state law claims when the court has dismissed all claims over which it has original jurisdiction); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well").  Accordingly, the Court will dismiss Count VI of Plaintiff's Amended Complaint without prejudice.

**CONCLUSION**

For the above stated reasons, the Court will: (1) grant summary judgment as to Counts I, II, III, IV and V of Plaintiff's Amended Complaint in favor of PCCF and the Individual Defendants; and (2) dismiss Count VI of Plaintiff's Amended Complaint without prejudice.

An appropriate Order will follow.


 October 3, 2006                                           s/ A. Richard Caputo
Date                                                       A. Richard Caputo
                                                           United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MICHELLE DOTY,

      Plaintiff,

          v.

PIKE COUNTY CORRECTIONAL
FACILITY, et al.,

      Defendants.

CIVIL ACTION NO. 3:04-CV-1742

(JUDGE CAPUTO)

## ORDER

**NOW**, this __3rd__ day of October, 2006, **IT IS HEREBY ORDERED** that:

(1)    Defendants Pike County Correctional Facility, John Frawley, Sergeant James Monaghan, Officer Daniel Gilligan, Lieutenant Robert McLaughlin, Lieutenant Eric Stewart, and Richard Caridi's Motion for Summary Judgment (Doc. 24-1) as to Counts I, II, III, IV and V of Plaintiff's Amended Complaint (Doc. 3) is **GRANTED**.

(2)    Count VI of Plaintiff's Amended Complaint (Doc. 3) is **DISMISSED** without prejudice.

(3)    The Clerk of the Court shall mark this case as **CLOSED**.

      _s/ A. Richard Caputo_
      A. Richard Caputo
      United States District Judge